UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GLORIA HODGE,

                              Plaintiff,

        v.                                      No. 07-CV-0162

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Gloria Hodge ("Plaintiff") brought this action under §205(g) and §1631(c)(3) of the

Social Security Act, codified as 42 U.S.C. §405(g) and §1383(c)(3), to review a final

determination of the Commissioner of Social Security ("Commissioner") that denied Plaintiff's

application for disability insurance benefits. Before the Court are the parties' motions for

judgement on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

**I.      FACTS**

        **A. Procedural History**

        Plaintiff applied for Supplemental Security Income ("SSI") on January 28, 2003.

She was denied benefits on June 12, 2003 and filed a pro se request for a hearing before an

Administrative Law Judge ("ALJ"). The original hearing was held on September 17, 2004 at

---

[1] Plaintiff complaint names Linda McMahon, Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d)(1), Michael Astrue, Commissioner of Social Security as of February 12, 2007, is substituted as proper defendant in this suit.

which time Plaintiff requested adjournment to obtain counsel. On November 24, 2004,

Plaintiff appeared before the ALJ represented by an attorney. A supplemental hearing was

held March 24, 2005 at which time Peter Manzi, a Vocational Expert ("VE"), testified. ALJ

Thomas Zolezzi denied Plaintiff's request for Social Security benefits on June 20, 2005.

A request for review by the Appeals Council was submitted on behalf of Plaintiff on

August 16, 2005 and was subsequently denied on December 18, 2006. The decision of the

ALJ became the Commissioner's final decision in the case. Plaintiff commenced this civil

action on February 12, 2007 requesting review of the Commissioner's decision.

### B. Medical History

Plaintiff was born on February 23, 1959 and completed some college. Tr. at 168,

275, 447.[2, 3] She has five children and four grandchildren. Tr. at 448. She was employed until

November 1, 2001 as a nurse's aide. Tr. at 107, 452. After that, she worked as a residential

counselor until February 2003. Tr. at 168, 276, 454, 455. She then worked as a cook at a

family restaurant until the fall of 2004. Tr. at 377, 383, 455.

Plaintiff was diagnosed as HIV positive in 1993. Tr. at 405. She also has Hepatitis

C. Tr. at 403, 405. Plaintiff has a history of drug abuse and had been on a Methadone

maintenance program. Tr. at 117, 168.[4]  The record shows that Plaintiff has been on and off

---

[2] "Tr." refers to Administrative Transcript filed by the Commissioner.

[3] Plaintiff stated on her disability form that she has completed through the 12th grade. Tr. at 275. During her hearing with the ALJ, Plaintiff states that she has completed two years of college. Tr. at 447.

[4] Due to Plaintiff's own statements, the record is not clear on when Plaintiff began the Methadone program. Plaintiff stated to Dr. David Herman at Albany Medical Center on February 6, 2003 that she had been on Methadone for five years. Tr. at 117. She told Dr. Annette Payne, the SSA appointed psychologist, on May 13, 2003 that she had been on the Methadone program for one year. Tr. at 168.

illegal drugs, with the most recent positive test for cocaine and opiates occurring in October of 2004. Tr. at 403. She is a smoker and occasionally consumes alcohol. Tr. at 118, 168.[5] Plaintiff maintains her own hygiene care and her son helps her with the cooking, shopping and cleaning. Tr. at 173, 467, 470.

Plaintiff's primary care physician until 2004 was Dr. Adetutu Adetona. Tr. at 252-54, 291, 462. Plaintiff visited Dr. Adetona on May 5, 2000 for examination of an injury that occurred at work on March 17, 2000. Tr. at 256-57. Dr. Adetona prescribed a muscle relaxant and physical therapy. *Id.* It was also noted that eight years prior, Plaintiff had been injured at work but had recovered. *Id.* During the May 2000 visit, Dr. Adetona declared Plaintiff disabled from her "regular duties or work" at that time. *Id.*

On January 29 and April 16, 2002, Plaintiff was again seen by Dr. Adetona. Tr. at 253-54. Plaintiff's complaints included insomnia, swollen hands and ankles, and pain in her left wrist. *Id.* Dr. Adetona's diagnosis stated that the swelling and pain in the ankles may be due to arthritis, and he prescribed insomnia and pain medication. *Id.* It was also noted that Plaintiff's past history was significant for chronic pain and HIV. *Id.* Plaintiff was taken off of Ketoprofen, an anti-inflammatory, and put on Mobic, another arthritis medication. Tr. at 253.[6]

On June 29, 2002 Plaintiff visited the emergency room ("ER") where she complained of a cough. Tr. at 279. Tests were performed and bronchial markings were

---

[5]Throughout the record, Plaintiff reports consuming some alcohol. Tr. at 118. At other times, she reports consuming no alcohol. Tr. at 168, 252. In her testimony on November 24, 2005, Plaintiff stated that she had not had a drink in one year. Tr. at 475.

[6] Ketoprofen is used to treat signs and symptoms of arthritis. RxList, Ketoprofen, at http://www.rxlist.com/orudis-drug.htm (last visited June 29, 2009). Mobic is used for relief of signs and symptoms of arthritis. RxList, Mobic, at http://www.rxlist.com/mobic-drug.htm (last visited June 29, 2009).

observed, which may have been due to bronchitis or lower airway infection. *Id.* These tests were sent to Dr. Adetona. *Id.*

Plaintiff visited Albany Medical Center on July 16, 2002 complaining of chest pain and persistent cough. Tr. at 153. She was seen by Dr. Marvin Day who discussed with Plaintiff the need to quit smoking. Tr. at 154. The report stated that Plaintiff had been to the Seton Health ER four times in the previous two weeks. Tr. at 153. There were no records included in the administrative record by Seton Health between June 29 and July 16. Tr. at 279.

Plaintiff visited Albany Medical Center again on September 6, 2002 for a routine HIV follow up visit. Tr. at 131, 151. She complained of leg numbness and back pain that she rated an eight out of ten. *Id.* Dr. Day reported that Plaintiff's back pain had gotten better over several years and that Plaintiff appeared under no distress. *Id.* Plaintiff reported that she was not on any drugs or alcohol, just Methadone maintenance. *Id.* Plaintiff was given prescriptions for Soma and Ketoprofen. Tr. at 132, 152.[7] A follow up appointment with Dr. Day was scheduled. *Id.*

On January 14, 2003, Plaintiff returned to Dr. Adetona. Tr. at 252. Plaintiff complained of back pain and depression. *Id.* She stated that she smoked, but did not use drugs or alcohol. *Id.* She claimed to have not used drugs in five years, but the records show that she tested positive for cocaine in August 2002. *Id.* Dr. Adetona prescribed Bextra and Soma for Plaintiff's pain and Zoloft for her depression. *Id.* Dr. Adetona stated that the back

---

[7]   Soma is used for treatment of painful musculoskeletal conditions in adults. RxList, Soma, at http://www.rxlist.com/soma-drug.htm (last visited June 22, 2009).

pain was due to injury or degenerative joint disease and recommended follow up in two to three weeks. *Id.*

The above was followed by two visits to Albany Medical Center. Tr. at 117, 129. On February 6, 2003, Plaintiff went to the ER complaining of abdominal pain that had lasted one week. Tr. at 117, 146. She was admitted and it was determined that Plaintiff had a urinary tract infection and Pyelonephritis[8]. *Id.* Her current medications were listed as Soma, Ketoprofen, and Methadone and she was given Gatifloxacin to treat the infections. Tr. at 119. Dr. David Herman discharged the Plaintiff and recommended a follow up urinalysis. Tr. at 117, 119. On February 16, 2003 Plaintiff was admitted again with complaints of right sided flank pain. Tr. at 129. She was diagnosed with constipation and costochondritis[9], discharged on February 27 and scheduled for follow up with Dr. Day on March 12, 2003. Tr. at 129.

Next, Plaintiff was examined by several consultants at the request of the Social Security Administration. Tr. at 168, 172, 176, 183. On May 13, 2003, Plaintiff saw Dr. Annette Payne for a psychiatric evaluation. Tr. at 168. Plaintiff reported to Dr. Payne that she was in drug and alcohol rehabilitation and that she was one year clean and one year on the Methadone program. *Id.* Plaintiff also stated during this examination that as a result of being the victim of three rapes she had nightmares and flashbacks that led to difficulty sleeping. Tr. at 169. At this time, Plaintiff also denied having any panic attacks or manic symptoms but stated that she suffered from significant depression and anxiety. *Id.* Plaintiff also reported to

---

[8] Pyelonephritis is inflammation of the kidney and renal pelvis often due to the ascent of bacteria from the bladder. *Stedmans Online Medical Dictionary, 27th Edition*, at http://www.stedmans.com/section.cfm/45 (last visited June 29, 2009).

[9] Costochondritis is the inflammation of the cartilage of the chest wall, characterized by local tenderness and pain of the anterior chest wall. *Stedmans Online Medical Dictionary, 27th Edition*, at http://www.stedmans.com/section.cfm/45 (last visited June 29, 2009).

Dr. Payne that she performed chores and could take care of herself, but that her children and

significant other helped with the laundry, shopping, cooking and with managing finances. Tr.

at 170.

Dr. Payne's analysis stated that Plaintiff could follow and understand simple

directions and perform simple rote tasks under supervision. Tr. at 171. She also stated that

Plaintiff had problems with attention and concentration, that she had difficulties performing

complex tasks and making appropriate decisions and that she had difficulties relating with

others and dealing with stress. *Id.* Dr. Payne reported that Plaintiff's psychiatric difficulties

were moderately limiting. *Id.* Recommendations included in the evaluation stated that Plaintiff

would likely benefit from vocational rehabilitation, regular counseling and psychotropic

medications, and from a program that would address both substance abuse and psychiatric

difficulties. *Id.* Dr. Payne's prognosis of Plaintiff was "fair". *Id.*

Also on May 13, Plaintiff was examined by Dr. Assim Yousef. Tr. at 172. Plaintiff

complained to Dr. Yousef of back trouble and a pinched sciatic nerve which caused leg

numbness on her left side. *Id.* She also mentioned swelling of both her hands and feet if she

stood up for too long. *Id.*  Plaintiff told Dr. Yousef that she cooked a few times a week with

the help of her son and that her son did the cleaning and shopping. Tr. at 173.

Dr. Yousef reported that Plaintiff had a shuffling gait, that she could only walk on

her heels and toes with difficulty and that she needed help getting off of the exam table. Tr.

at 173. He also reported that Plaintiff needed no help changing for the exam, she was not

using a cane and that she was able to rise from a chair with no difficulty. *Id.* Dr. Yousef

stated that straight leg raise ("SLR") was negative on the right but positive on the left at 60

degrees, both in supine and sitting positions. Tr. at 174. He also noted full range of motion of

hips and knees, elbows and forearms but noted that right and left shoulder forward elevation and abduction was diminished to 120 degrees. *Id.*

Additionally, Plaintiff exhibited intact hand and finger dexterity and a 5/5 grip strength. Tr. at 175. Dr. Yousef's prognosis was "guarded" and he stated that Plaintiff should be restricted from activities that cause fatigue. *Id.* He reported that Plaintiff has moderate limitations with prolonged standing, walking, carrying and heavy lifting due to a herniated disk. *Id.* Dr. Pesho Kotval performed a spine x-ray on the Plaintiff on May 13 which showed vertebral body heights and disc spaces of the lumbo-sacral spine maintained at all levels. Tr. at 176. His finding was that no bony or disc space pathology was identified. *Id.*

On June 11, 2003, Dr. Joseph Dambrocia conducted a psychiatric review of the Plaintiff. Tr. at 183. He noted that Plaintiff suffered from Major Depressive Disorder, Post Traumatic Stress Disorder and Substance Addiction Disorders. Tr. at 183, 186, 188. Dr. Dambrocia reported that Plaintiff was mildly limited in activities of daily living and maintaining concentration, persistence or pace but moderately limited in maintaining social functioning. Tr. at 193. In his Mental Residual Functional Capacity Assessment, Dr. Dambrocia concluded that Plaintiff was moderately limited in the ability to understand, remember and carry out detailed instructions. Tr. at 197. He also noted that Plaintiff was moderately limited in the ability to respond appropriately to changes in the work setting, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others. Tr. at 198.

Plaintiff then returned to Albany Medical Center for treatment. Tr. at 222, 321. She complained that her chest hurt and was diagnosed with an upper respiratory infection. *Id.* Dr. Day noted that Plaintiff had an unremarkable gait and again referred to the need for her to

quit smoking. Tr. at 223. On July 25, 2003, Plaintiff visited Albany Medical Center for a follow up HIV visit. Tr. at 220, 319. She did not complain of any pain at this appointment but did state she had three seizure-like episodes in the last week. *Id.* Dr. Day set up an echocardiogram appointment. Tr. at 221.

On August 8, 2003, Plaintiff went to Albany Medical complaining of back pain that she rated a six out of ten. Tr. at 218, 317. Dr. Day noted an unremarkable gait and Plaintiff also admitted she had missed a dose of Methadone. *Id.* An exam done on August 11 showed apophyseal joint degenerative disease at the L5-S1 level of the lumbar spine. Tr. at 241. The overall appearance of the vertebral bodies and disc spaces was similar to a study done on November 28, 2001. *Id.* On August 22, Plaintiff returned complaining of sharp pain shooting down her legs. Tr. at 216, 315. Dr. Day referred her for an MRI exam. Tr. at 217, 316. Plaintiff presented again with lower back pain on September 11, 2003 after missing a routine appointment. Tr. at 214, 313. The record noted an unremarkable gait and that Plaintiff's mood and affect were good. *Id.* The MRI taken on August 29 was reviewed and showed mild bilateral facet hypertrophy in the L3-4, L4-5 and L5-S1 ranges. Tr. at 240.

Plaintiff returned to Albany Medical for a follow up HIV visit on October 3 with no report of back pain. Tr. at 212, 311. Dr. Day noted that this visit was a follow up for a urinary tract infection. *Id.* He reported an unremarkable gait and that her mood and affect were "good". *Id.* Plaintiff was to start Methadone detoxification as well. Tr. at 213, 312.  Plaintiff had an examination of her right wrist on November 17 at Seton Health ER with the results forwarded to Dr. Adetona. Tr. at 271. There was no evidence of a fracture, but views did show mild degenerative changes. *Id.*

On January 6 and February 17, 2004, Plaintiff went to Albany Medical for follow up HIV visits. Tr. at 208, 210, 307, 309. At both visits she complained of swelling in her hands and feet. *Id.* At the January visit, it was noted that Plaintiff suffered from chronic lower back pain and she was scheduled for a liver biopsy. Tr. at 210, 309. Dr. Day reported an unremarkable gait and that Plaintiff's mood and affect were "okay" at both visits. Tr. at 208, 210, 307, 309. Plaintiff had a liver biopsy performed January 19, 2004. Tr. at 239, 322. The results stated that her Hepatitis C infection was moderately active. *Id.* It was noted at her visit on February 17 that she was not on HIV medication and that her infection was considered non-progressing. Tr. at 307.

Plaintiff next visited the Seton Health ER on two separate occasions, February 28 and March 20, 2004. Tr. at 243-51, 385-93, 378-82. The February 28 visit was due to a fall on the ice. Tr. at 378. Plaintiff was experiencing pain in her right leg. *Id.* There were no abnormalities observed in any tests performed, however Plaintiff had a slight limp and there was a contusion on her right thigh. Tr. at 380, 381. She was discharged with pain medication. Tr. at 379.

On March 20, Plaintiff went to the ER because she did not feel well. Tr. at 246, 385. She complained of cold sweats and fever. *Id.* At the request of the ER, a chest exam was done. Tr. at 243, 393. Everything was reportedly normal and there was no evidence of active intrathoracic disease. *Id.* Plaintiff was discharged by Dr. Adetona. Tr. at 245, 387.

Plaintiff then returned to Albany Medical Center for a follow up HIV visit on March 31, 2004. Tr. at 206, 305. It was noted that she had been to Seton Health ER for treatment for a urinary tract infection. *Id.* Plaintiff returned to Albany Medical on April 27 where it was noted that she had chronic back pain, but she was not experiencing pain at the time of the

visit. Tr. at 204, 303. On June 22, Plaintiff again visited Albany Medical for a follow up HIV

visit with complaints of pain during urination. Tr. at 301. She had no complaints of back pain

and her mood and affect were noted as "okay". *Id.*  It was noted that she was suffering from a

prolapsed bladder. Tr. at 302.

On July 23, 2004 Plaintiff presented to Albany Medical with swelling in her hands

and feet. Tr. at 299. She was diagnosed with mild edema and referred for an

echocardiogram. Tr. at 300. It was noted that she had already missed four appointments for

echocardiography. *Id.* Plaintiff was taken off of Ketoprofen at this time due to the side effects

(fluid retention) the drug was having. *Id.*

Plaintiff visited Samaritan Hospital on October 7, November 16, and December 14,

2004. Tr. at 294-298. The reports show that she had increased levels of anxiety and

abnormal levels of energy, sleep, mood and affect. *Id.* Additionally, Plaintiff visited the Seton

Health ER on October 18, 2004. Tr. at 397. She was seen by several doctors who copied

their reports to Dr. Chisara Adonai, Plaintiff's treating physician at the time. Tr. at 398-99,

401, 403, 405. Dr. Frederick Braunstein examined the Plaintiff and reported that abdominal

pain may be due to drug withdrawal. Tr. at 400. Dr. Mohammed Ismail reported that Plaintiff

admitted to recent heroin and crack cocaine use. Tr. at 401. His impression was that Plaintiff

had a history of opiate dependency and alcohol abuse and his recommended plan of care

was for observation. Tr. at 402. Dr. Hani Midani noted that Plaintiff tested positive for cocaine

and opiates and was in good general health. Tr. at 403. Plaintiff also displayed poor effort in

the motor exam and her heel and shin maneuvers were normal. Tr. at 404. Dr. Midani stated

that the Plaintiff's seizure may be related to drug abuse. *Id.* Plaintiff was also recommended

for an MRI, which showed evidence compatible with migraines in some patients but

otherwise unremarkable results. Tr. at 412. Plaintiff also saw Dr. Tanveer Sultan who reported no restriction of joint movements. Tr. at 405. During this visit to Seton Health, Plaintiff had a chest exam done which showed degenerative changes in the spine. Tr. at 413. On November 7, 2004, Plaintiff returned to Seton Health ER with a headache and abdominal pain. Tr. at 394, 424. Test results did not show anything specific. Tr. at 424.

Plaintiff's treating physician completed a Medical Source Statement on December 10, 2004. Tr. at 291-293. Dr. Chisara Adonai stated that Plaintiff had a limited range of lumbar motion due to lumbosacral pain and had a positive SLR. Tr. at 292. The report also showed that Plaintiff could occasionally and frequently lift less than 10 pounds. Tr. at 291. Plaintiff was able to stand or walk for less then two hours per day and sit for less than six hours per day. Tr. at 292. Her pain affected her ability to push or pull using the lower extremities. *Id.* Plaintiff also had occasional postural limitations when crouching, kneeling, crawling or balancing. *Id.* Dr. Adonai noted no other limitations with respect to environmental, communicative or manipulative functions. Tr. at 293.

On March 14, 2005, Plaintiff was admitted to Samaritan Hospital with complaints of a possible seizure. Tr. at 427. She was examined by three doctors. Tr. at 429, 432, 434, 437. Dr. Lawrence Corbett noted that Plaintiff complained of pain and stated she had chronic left leg sciatica. Tr. at 432. He observed that she was mildly obese and walked without assistance. Tr. at 432-33. Dr. Corbett stated that Plaintiff's seizure may be related to withdrawal from multiple medications, including Soma and Klonopin. Tr. at 433.[10]

---

[10] Klonopin is prescribed for treatment of panic disorder and seizure disorders. RxList, Klonopin, at http://www.rxlist.com/klonopin-drug.htm (last visited June 22, 2009).

Dr. William Robinson examined the Plaintiff and also noted that her seizure may have been provoked by medication withdrawal. Tr. at 435. He recommended observation and follow up. *Id.* Dr. Robert Ezeifedi admitted Plaintiff for a work up for nausea, vomiting, dehydration and seizure. Tr. at 429-30. The seizure work up came back negative, Plaintiff was re-hydrated and discharged on March 18. *Id.*

Throughout the record, it has been noted that Plaintiff's HIV status had been consistently non-progressive. Tr. at 204-221, 303-320. Her CD4 and viral load levels had remained in the same range throughout and she had never been on anti-viral medication for HIV. *Id*. The record does not show that Plaintiff suffered from any symptoms commonly associated with Hepatitis C infection. *Id*.[11] A liver biopsy was performed on January 19, 2004 and the results noted moderately active Hepatitis C. Tr. at 239, 322. Plaintiff testified on November 24, 2004 that Dr. Marvin Day at Albany Medical Center stated that he was concerned about the progression of the Hepatitis C and that he would discuss with the Plaintiff treatment options at their next visit. Tr. at 457-58. Plaintiff also testified that she was suffering from fatigue and flu-like symptoms due to the Hepatitis C and HIV infections. Tr. at 458.

### C. ALJ Analysis

In determining whether a claimant may receive supplemental security income the issue is whether the claimant is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[11] Hepatitis C symptoms, if they occur, are seen two weeks to six months after infection. Symptoms include fatigue, vomiting, joint pain, fever, abdominal pain, nausea and loss of appetite. A person with chronic hepatitis C usually will not show symptoms, however, after many years, liver damage may occur. Center for Disease Control, Division of Viral Hepatitis, at http://www.cdc.gov/hepatitis/C/cFAQ.htm#symptoms (last visited June 24, 2009).

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d). The ALJ must determine whether the claimant is disabled by performing a five-step evaluation based on 20 CFR §§ 404.1520 or 416.920. The Supreme Court recognized this test in Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987) and it is still the proper analysis for the determination of a claimant's disability. The five step evaluation process is:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

Here, the ALJ determined that although the Plaintiff had worked since the alleged date of her disability onset, that work was considered an unsuccessful work attempt and, therefore, the Plaintiff had not engaged in substantial gainful work activity since October 31, 2002. Tr. at 28, 34.  Based on his analysis of the Plaintiff's HIV, back pain, bi-polar disease and anxiety, the ALJ found that Plaintiff suffered from "severe" impairments but did not have a "listed" impairment

included in Appendix 1 of the regulations. Tr. at 28, 29, 34.[12]  The ALJ determined that while the

Plaintiff did not have the residual functional capacity ("RFC") to perform her past relevant work,

she did meet the physical and mental requirements for sedentary work and, therefore, work

existed in the national economy that Plaintiff was capable of performing. Tr. at 30, 33-35.

## II.      STANDARD OF REVIEW

The district court reviews the "administrative record *de novo* to determine whether

there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." Machadio v. Apfel, 276 F.3d 103, 108 (2d

Cir. 2002). The Commissioner's finding must be sustained if supported by substantial

evidence. Moscatiello v. Apfel, 129 F. Supp. 2d 481, 488 (E.D.N.Y. 2001). Substantial

evidence "'means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court cannot substitute

"its own judgement for that of the [Commissioner], even if it might justifiably have reached a

different result upon a *de novo* review" of the facts. Valente v. Secretary of Health & Human

Services, 733 F.2d 1037, 1041 (2d Cir. 1984).

A finding of legal error is cause for remand, even if substantial evidence exists to

support the Commissioner's factual findings. Johnson, 817 F.2d at 986; see also Northcutt v.

Califano, 581 F.2d 164, 167 (8th Cir. 1978). Moreover, a finding that the Commissioner has

failed to specify the basis for her conclusions is an equally compelling cause for remand.

---

[12] The Plaintiff reported in her Disability Report that she suffered from "hiv/bipolar" and in her hearing, when questioned by the ALJ about having bipolar, she answered affirmatively. Tr. at 106, 449. There is no medical evidence to support this disorder. Dr. Payne's analysis specifically states that Plaintiff "denies manic symptoms." Tr. at 169.

Lugo v. Chater, 932 F. Supp. 497, 501 (S.D.N.Y. 1996). "It is self-evident that a determination by the [Commissioner] must contain a sufficient explanation of [her] reasoning to permit the reviewing court to judge the adequacy of [her] conclusions." Rivera v. Sullivan, 771 F. Supp. 1339, 1354 (S.D.N.Y. 1991); see also White v. Secretary of Health & Human Servs., 910 F.2d 64, 65 (2d Cir. 1990).

## III.     DISCUSSION

### A. Treating Physician Rule

The Plaintiff argues that the ALJ did not give enough weight to the treating physician's opinion in his decision. Tr. at 10-11. The treating physician's opinion is given more weight because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of . . . medical impairment." 20 C.F.R. § 416.927(d)(2). The treating physician's medical opinion is binding on the ALJ unless it is inconsistent with other substantial evidence or it is not supported by clinical and laboratory evidence. Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993). The ALJ must give specific reasons regarding what weight was given to the treating physician's opinion.  20 C.F.R. §§ 404.1527 (d)(2), 416.927 (d)(2); Schisler, 3 F.3d at 568; Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). If the ALJ determines that the reports received from the treating source are incomplete, it is the duty of the ALJ to request further information. Schisler, 3 F.3d at 570. If the treating source reports are inconsistent with other substantial evidence in the record then it is the duty of the ALJ to resolve those conflicts. *Id.*

Here, Plaintiff testified that Dr. Adetutu Adetona was her primary physician until she began seeing Dr. Chisara Adonai in late 2004. Tr. at 291, 462. The record shows that Dr.

Adetona saw the Plaintiff before and after her claim for disability. Tr. at 252-54, 387.  The ALJ noted that Dr. Adetona reported that Plaintiff was disabled in 2000, but because that was so long before the alleged onset date of disability, he did not give the report much weight. Tr. at 32. The medical record includes several additional reports from Dr. Adetona, but the ALJ makes no mention of these, other than to point out that the Plaintiff did not complain of back pain until 2003. *Id*. In fact, Dr. Adetona's reports consistently note a history of chronic back pain. Tr. at 253-54.

On December 10, 2004, Plaintiff visited Dr. Adonai. Tr. at 291-93. Dr. Adonai completed a Medical Source Statement in which she stated that the Plaintiff had limitations in her ability to sit, stand and walk throughout the day and also had limitations with lifting and carrying ten pounds and with pushing and pulling with her lower extremities. Tr. at 32, 291-93. She also noted a positive left leg SLR. Tr. at 292. The ALJ noted that these findings were inconsistent with the reports of other physicians. Tr. at 32.[13]

In his decision, the ALJ discussed the opinion of Dr. Assim Yousef. Tr. at 30. He noted that Dr. Yousef examined the patient only one time and that his opinion was inconsistent with the evidence and therefore his opinion is not given much weight in the ALJ's decision. *Id.* Dr. Yousef examined the patient on the same day as Dr. Annette Payne, who also saw the patient only once and whose opinion the ALJ afforded great weight. Tr. at 29. The ALJ stated that this is because Dr. Payne's opinion is consistent with the record. *Id.* However, Dr. Yousef's opinion is consistent with that of Dr. Adetona and Dr. Adonai, both treating physicians, with respect to noting a positive left leg SLR, back pain and moderate

---

[13] The ALJ decision refers to Dr. Chisara Adonai as Dr. Ehisara Admair.

limitations with prolonged standing, walking, heavy lifting and carrying. Tr. at 174-75, 252, 291-92.[14] Additionally, Plaintiff visited Albany Medical Center Division of HIV for appointments related to monitoring of her HIV status. Tr. at 204-23, 303-322. The record shows that the Plaintiff noted back pain on several occasions. *Id.*

The ALJ is required to give "good reasons" to the Plaintiff for his determination of the weight given to the treating physician's opinion. 20 C.F.R. §§404.1527 (d)(2); 416.927 (d)(2). The ALJ cannot pick and choose only that portion of the evidence that supports his conclusions. <u>Morgan v. Chater</u>, 913 F. Supp. 184, 188 (W.D.N.Y. 1996); <u>Kuleszo v. Barnhart</u>, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002). If the ALJ does not give controlling weight to the treating physician's opinion, various factors must be examined to determine how much weight is given to the opinion. 20 C.F.R. §§404.1527 (d)(2); 416.927 (d)(2). These factors include: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the SSA's attention that tend to support or contradict the opinion. <u>Gonzalez v. Barnhart</u>, 491 F. Supp. 2d 329, 337 (W.D.N.Y. 2007). In his decision, it is not clear whether the ALJ used these factors in determining what weight to give the treating physicians' opinions. Tr. at 27-35. The ALJ did not note in his decision that Plaintiff had a treating physician. *Id* He stated that the reason he was not giving much weight to Dr. Adonai's and Dr. Adetona's opinions was that their reports were inconsistent with the

---

[14] The ALJ decision states that Dr. Yousef's examination found positive SLR on the right. Tr. at 31. Dr. Yousef's report states positive SLR on the left leg, which was reproduced while sitting. Tr. at 174.

record. *Id*. Their reports were, however, consistent with each other, with Dr. Yousef's opinion, and with reports from Albany Medical Center Division of HIV. Tr. at 174-75, 204-223, 303-322, 252, 291-92.

Additionally, the ALJ stated that Dr. Adonai's records do not support the findings in her Medical Source Statement, "or they were not made available" and therefore the ALJ did not give Dr. Adonai's report much weight in the decision. Tr. at 32. It is the duty of the ALJ to make reasonable efforts to develop the record. 20 C.F.R. § 404.1512(d); Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998); Schisler, 3 F.3d at 570. There are no other reports from Dr. Adonai in the record and therefore it is not clear what basis the ALJ used to claim that Dr. Adonai's records do not support her findings.

In light of the fact that the ALJ did not adhere to the treating physician rule and did not fully develop the record, this case should be remanded. See Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000); see also Schnetzler v. Astrue, 533 F. Supp. 2d 272, 290 (E.D.N.Y. 2008).

### B. Determination of Plaintiff's RFC and Vocational Expert Testimony

Plaintiff claims that the ALJ did not take into consideration all of her limitations in his RFC assessment, specifically her non-exertional limitations. Tr. at 11. In determining a claimant's RFC, the ALJ must note how the "evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)" to support each conclusion. Social Security Ruling 96-8p, 1996 SSR LEXIS 5, at 19; see also Balsamo v. Chater, 142 F.3d 75, 80-81 (2d Cir. 1998). Additionally, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the

functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§404.1545, 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." S.S.R. 96-8p, 1996 SSR LEXIS 5, at 2; see also Pronti v. Barnhart, 339 F. Supp. 2d 480, 490 (W.D.N.Y. 2004).

Here, the ALJ did not sufficiently explain the basis for his RFC assessment and therefore it cannot be determined whether the correct legal standard was applied. The ALJ qualified the Plaintiff's RFC as able to perform sedentary work based on the "totality of the record" but did not cite specific medical facts or non-medical evidence. Tr. at 30. The ALJ included in his RFC assessment that Plaintiff was able to walk or stand two hours per eight hour day, sit for less than six hours, could lift or carry less than 10 pounds, and should have a sit or stand option every 20 minutes. *Id*. The ALJ did not cite to a specific medical report in stating these findings. *Id.*

The ALJ stated that he relied heavily on the opinion given by Dr. Annette Payne, who saw the Plaintiff once in May 2003. Tr. at 29, 168. He also noted that some weight is given to Dr. Joseph Dambrocia's opinion, a non-examining physician. Tr. at 29. These physicians examined Plaintiff's mental capabilities and limitations. Tr. at 29, 168. The ALJ stated that the Plaintiff maintained the mental capacity to meet the basic demands of work, but did not cite specifically to Drs. Payne and Dambrocia's opinions. Tr. at 29, 30. He defined the basic mental demands of work to include the ability to "understand, carry out and remember simple instructions, respond appropriately to supervision, coworkers, and usual work situations. . . and deal with changes in a routine work setting." Tr. at 30; SSR 85-15, 1985 WL 56857, (S.S.A.)  Dr. Payne's opinion stated that Plaintiff may have difficulty relating to others and with learning new tasks and she was able to follow and understand simple

directions and instructions. Tr at 29, 171. Dr. Payne also noted that Plaintiff was able to

perform simple rote tasks under supervision. *Id.* Dr. Dambrocia noted in his opinion that

Plaintiff is moderately limited in her ability to respond appropriately to changes in work setting

and in remembering and carrying out detailed instructions. Tr. at 183-99. Without the ALJ

pointing to specific evidence to support his finding, and medical opinions appearing

inconsistent with his decision, it cannot be determined if he applied the correct legal standard

in assessing Plaintiff's mental capabilities.

When, as here, the Plaintiff suffers from both exertional and non-exertional

limitations, the ALJ must request testimony from a VE in consideration of his decision. Tr. at

12, 33; Correa-Santiago v. Sullivan, 1990 U.S. Dist. LEXIS 7376 (S.D.N.Y. 1990); Bapp v.

Bowen, 802 F.2d 601, 605 (2d Cir. 1986). To be useful, "the hypothetical questions must

present the full extent of the claimant's impairments to provide a sound basis for the

vocational expert's testimony." Grant v. Astrue, 2008 U.S. Dist. LEXIS 58669 (N.D.N.Y July

31, 2008); see also Jehn v. Barnhart, 408 F. Supp. 2d 127, 137 (E.D.N.Y. 2006); Lugo v.

Chater, 932 F. Supp. 497, 504 (S.D.N.Y. 1996). With regard to the VE's testimony, the ALJ's

hypothetical did not present many of the limitations he established in the RFC assessment.

Tr. at 30, 33. He stated only that there should be no climbing, no use of ladders, and there

should be a sit or stand option available every 20 minutes. Tr. at 33. He included mental

limitations such as there should only be simple decision making, no planning, scheduling,

report writing or supervising, and there should be little or no change in the work environment.

*Id.*

While Plaintiff's attorney supplemented the ALJ's hypothetical with questions, the

VE's response was somewhat unclear. Tr. at 499-500. The additional limitations that the

attorney included are supported by the record, specifically in Dr. Adonai's report. Tr. at 291-93. The questions posed by the attorney included the limitations that Plaintiff could stand for less than two hours, sit for less than six hours, lift less than ten pounds and she could not use her lower extremities for pushing or pulling. *Id*. Additionally, the attorney asked if the recommended jobs would be applicable if the Plaintiff had to alternate her position every ten, 15 or 20 minutes. *Id.* The VE's response was non-specific in that he did not address the questions. Tr. at 500. He stated "to alternate every ten minutes that would be frequent. If they could do it at 15 or 20 minutes that would be doable by you said less than two hours [INAUDIBLE] six hours." *Id.* It is unclear what answer the VE was giving to the attorney's question. Also, the VE stated "[t]here's a potential there to achieve less than an eight hour day there so [INAUDIBLE] if you consider the eight day as a requirement or close to eight hours [INAUDIBLE]." *Id.* Again, the VE's response did not seem to answer the additional limitations imposed by the attorney.

If the RFC assessment is flawed and the VE's testimony is not supported by sufficient evidence, then remand is required. Pronti, 339 F. Supp. 2d at 491.

### C. Assessment of Plaintiff's Credibility

Plaintiff contends that the ALJ did not adequately assess her credibility. Tr. at 12. At times, claimant's statements are not supported by medical evidence and, therefore, the ALJ must determine whether the claimant is credible and how much weight should be given to subjective statements. 20 C.F.R. §404.1529 (c)(3). The ALJ observed the claimant directly and his determination of the claimant's credibility should be given great weight. Gernavage v. Shalala, 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995); see also Mejias v. Social Sec. Administration, 445 F. Supp. 741, 744 (S.D.N.Y. 1978).

Here, Plaintiff contends that the ALJ should have requested further information to resolve the conflicting statements he addressed in assessing Plaintiff's credibility. The ALJ observed that Plaintiff's testimony and the administrative record were inconsistent with respect to the period in which Plaintiff worked at Friendly's Restaurant. Tr. at 32. She stated she worked there one to two months, however, the record included Seton Health ER visits in March, August and November 2004 where she listed her employer as Friendly's. Tr. at 377, 383, 394. He also noted that Plaintiff's statements throughout the record and the hearing regarding her drug and alcohol abuse were conflicting. Tr. at 32, 33. She stated during the hearing on November 24, 2004 that she had been on the Methadone program for ten years. Tr. at 475. On May 13, 2003 Plaintiff reported to Dr. Payne that she had been on the Methadone program for about a year. Tr. at 168. The record shows that she tested positive for cocaine and opiates on October 18, 2004. Tr. at 403. The record consistently shows that there is an inconsistency with drug and alcohol use and reporting. Tr. at 252, 287, 403. There is substantial evidence to support the ALJ's determination of Plaintiff's credibility and "the ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). If the findings "are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Secretary, Dep't of Health & Human Services, 728 F.2d 588, 591 (2d Cir. 1984); see also McLaughlin v. Secretary of Health, Education and Welfare, 612 F.2d 701, 704 (2d Cir. 1982).

**IV.     CONCLUSION**

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is denied, the plaintiff's motion is granted in part, and the case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: July 2, 2009

Thomas J. McAvoy
Senior, U.S. District Judge